May it please the Court, Carmen Snuds, Deputy Attorney General for the Cross-Appellant, Jennifer Kent, the Director of the Department of Health Care Services. I'll start with the issues raised on the appeal by the Director, move to the appeal raised by Aids Healthcare Foundation, and I'd like to reserve seven minutes for any rebuttal. The District Court's judgment permanently in joining California's 340B statute must be reversed for the following reasons. Number one, the Supreme Court's decision in Armstrong v. Exceptional Child Care bars plaintiff supremacy claims as well as its 30A claims. Second, the District Court failed to correctly apply the substantive law to the impact of CMS file approval, and improperly held that the state had to do a cost study before implementing the statute. Third, plaintiff's claims regarding lack of CMS bar approval are moot. In 2015, the Supreme Court in Armstrong reviewed whether providers could proceed under the supremacy clause to enforce Section 30A. It held that the supremacy clause does not supply a cause of action, it doesn't provide an implied right of action, and it is not the source of federal rights. The Supreme Court also held that Section 30A is not privately enforceable by providers, because it does not contain congressional intent to create a private cause of action. Instead, sole discretion is vested in the Secretary to enforce 30A. Indeed, Justice Fryer, in his concurring decision, indicated that injunctive relief is not available under Section 30A, because the statute's language does not imply a private right of action. Here, AIDS Healthcare Foundation's third, fifth, and seventh causes of action purport to proceed under supremacy clause in Section 30A. The District Court erred in stating that Secondly, on January 30th, 2013, CMS approved the state's SPA, which contains the state's 340B statute. On remand from this Court, the District Court failed to apply Chevron deference to CMS bar approval. This Court in Managed Pharmacy Care said that CMS bar approval is The District Court erred in not deferring to CMS bar approval and in joining implementation of the 340B statute. Also persuasive on this issue is the Supreme Court's decision in Douglas v. Independent Living at page 1210, where it indicates that where CMS has taken final agency action, courts should not take a different, or reach a different result. In fact, the court there suggested that the case should not be allowed to proceed, because to do so would lead to inconsistent results and confusion. In addition, the District Court erred in finding that the state was required to conduct a cost study. This Court in Managed Pharmacy Care held that Section 30A does not require a state to conduct a cost study or to follow any particular methodology before imposing rate reductions. Rather, this Court held that only substantive results showing that compliance with Section 30A allows the state to enforce the statute. Here, there's documentation indicating that the DHCS and CMS approved the state's payment methodology. In addition, the state submitted adequate documentation that the modified rate coupled with the dispensing fee was adequate and should cover the cost of providing 340B drugs to Medicaid beneficiaries. And this is in the record at pages 45 to 95. If the Court doesn't have any further questions regarding the state's Section 30A claims in the appeal, then I'll move to the AIDS Healthcare Foundation's arguments on equal protection. I did have one question for you. It's a procedural one. There were a number of claims that the plaintiffs raised in their complaint. And I'm trying to understand, and if you need to refer to your notes and come back and rebuttal, that's totally fine. Yes, sir. There's a Claim 6, which was a claimed violation of 42 CFR 447.205, the Supremacy Clause. And I could not figure out from the record, nor could my law clerk, what happened to Claim 6. So if you know off the top of your head, great. If you want to wait to rebuttal, that's fine as well. Yes, Your Honor. I didn't do the trial court work, but off the top of my head, I believe Claim 6 was dismissed by the Court because this is the second time this case has been up to the Ninth Circuit. The state did file a motion to dismiss the original complaint or certain claims. The third, fourth, excuse me, fourth, and fifth. Wow. I have one question. During the long period it took to get approval, what was the status of affairs? The status of the affairs, Your Honor? The state implemented Section 340B statute and submitted a spol in October 2009. During that time, the state also submitted an additional spol with it that contained legislation that was subsequently enjoined by the district court. Because of the impending litigation, the CMS took the spols off the clock, so to speak, because of the impending litigation. The department and the state applied or requested that CMS separate the spols out so that it could continue to review the 340B statute. During that time, in 2011 and 2012, CMS requested additional information from the state, which the state supplied. During that back-and-forth process, it reviewed all the documentation submitted by the state and subsequently approved. Until it approved it, nothing went into effect? Yes, Your Honor. It started to be implemented and then once some of the statutes were enjoined, the state stopped implementing the statute. Thank you. Thank you, Your Honor. And unless the court has any more questions on the Section 30A claims, I'll turn now to AIDS Healthcare Foundation's equal protection claims. The district court in this case properly found that the state had a rational basis to implement and enact the 340B statute. Pursuant to federal guidance, the state is responsible for ensuring that providers comply with the double discount requirements of 340B. The state is responsible for accurately reimbursing the 340B entities, and the state is responsible for accurately claiming Medicaid rebates from drug manufacturers, and that is at the department's supplemental excerpts of record at page 25, and in its original excerpts of record at page 101. Prior to the enactment of the 340B statute, manufacturers were paying double discounts both to the state and to 340B providers. There was a high volume of disputes from the manufacturers because of the double discounts, which caused an administrative burden on the department. 340B providers were incorrectly billing the department, and as a result, the state was overpaying at the cost to taxpayers. The 340B statute here was designed to prevent that. AIDS Healthcare Foundation's claims failed because, number one, it's not similarly situated to non-340B providers. They receive upfront discounts of up to 60%, which non-340B providers do not receive. In addition, 340B providers volunteer to be part of the program because they do receive the deep discounts, and so they're not similarly situated. The court's consideration of the equal protection claims stopped there since they're not similarly situated, but even if this court does find that AIDS Healthcare Foundation is similarly situated to non-340B providers, the state has a legitimate basis for enacting the statute. Again, there were a myriad of problems regarding the double discounts, the inaccurate billing, the administrative burden on the state, and the enactment of the statute has decreased those overall as approved by the record. Again, the district court did properly find that there is a rational basis for the statute. Unless the court has any questions, I'll reserve the rest of my time to respond. May it please the Court, Jordan Cavella of Hooper, Lundy & Bookman for appellee and cross-appellant AIDS Healthcare Foundation, and I will start by responding to the issues on the primary appeal and then move to the cross-appeal. So I want to preface, before I get into Armstrong, which really I think is going to be how this court interprets it, is going to resolve the factual facts that led to the district court's injunction and finding that the state violated 30A. This wasn't just a case of the state attempting to adhere to 30A in whatever way they saw fit. They didn't consider any 30A factors at all before enacting this 340B statute that counsel referred to. The reason that they didn't do that is because they claimed it did not apply to them, or this particular statute. They claimed it was not a rate reduction, and so there was no analysis done whatsoever. And that is the issue, or one of the issues that came up before this court previously on the motion to dismiss. They took that position at the lower court at the pleading stage on a 12B6 motion and said, this should be dismissed. This isn't a, 30A doesn't even apply here because this isn't a rate reduction. So in the first decision that this case, this court issued in this case, they rejected that and said, no, this statute does in part change the rates, therefore 30A theoretically applies. And so the matter went back to the lower court. And the fact that no analysis was done by either Department of Health Care Services or the state legislature before enactment of the statute is undisputed. The state admits it. It's in the record. It's one of the, it's in the uncontroverted finding of facts that led to the injunction order. So that is largely what the district court relied on in deciding that there was a 30A violation here and the statute should be enjoined. That hasn't changed at all. That fact remains undisputed. The only thing that has really changed in terms of the way this case sits now since the district court issued its order is Armstrong. And so in order to determine, you know, whether Armstrong necessarily requires reversal of the decision, you really have to look closely at the Armstrong decision, which is a plurality decision. So there's four justices that joined the main decision. Judge Justice Breyer has a concurrence. And then there's a fairly strong dissent that comes down on the side of the 30A remaining enforceable. What, to me, Armstrong does clearly is establish that there is no, quote unquote, supremacy clause cause of action. It eliminates that concept. But, and the important thing to note with respect to that is they said, okay, even though there is no supremacy clause cause of action, we all, meaning all the justices on the Supreme Court, recognize that courts maintain inherent equitable power to enjoin state action that they find violates federal law. Both the primary opinion, the concurrence, and the dissent all recognize that. So even if something, even if there's no supremacy clause cause of action, courts still maintain the power to enjoin state law that conflicts with federal law. And that would be what we're relying on now, that this court can affirm the district court judgment using that inherent equitable power that they have. Well, to me, I'm trying to remember the briefs in this case. Did you make that argument in your briefs to this court, that there's an actual equitable power? I thought you were saying that in the briefs that part three of the opinion, or maybe there was a plurality and it didn't control. Well, they relate to one another. So we are relying on that. So I guess what, we are making the argument that it is now the equitable power of the court that we're relying on. And we think that we can do that based on the pleadings, because in addition to the express supremacy clause claim, there is, as often appears in complaints, in the prayer, you know, a request for whatever equitable relief that the court may grant. So- But you need a cause of action, don't you? I, the cause of action would be for equitable relief, which I think- Well, anybody can walk into court and say, here, we have a lousy immigration policy. I'd like to get equitable relief. No, that's something that I would have to look into further. But again, the language in the Armstrong opinion from, in each of the separate elements of that case does say that there is, independent of whether you call it a supremacy clause cause of action, there is this ability of federal courts to enjoin unlawful state action. So they didn't really specify in the Armstrong decision- That would be a nice expansion of the Supreme Court's usual latitude. But it would be very Well, even the Scalia plurality opinion does mention that and does not say that there isn't such thing as this equitable authority. And then, of course, Justice Breyer acknowledges it and Justice Sotomayor's dissent even expands on it further and indicates that, you know, you could still enforce these federal Medicaid statutes in federal court, even if you're not calling it a supremacy clause cause of action. So, assuming that the, and you know, at the time this case was brought, there was a supremacy clause cause of action that was recognized and not only- It was recognized here, yes. Yes, very well. I know you are quite familiar with it, Judge Reinhart. So then the question is, is what happened here still something that is enforceable? And can the court sustain this based on our contention that the state made no effort whatsoever to comply with Section 30A? And that's where Justice Breyer's concurrence comes in. Because I think it's fair to read the Scalia portion of the decision as establishing a bright line rule that nothing related to his concurrence to say, I wouldn't permit, quote, unquote, this action or this case. But he leaves open the door in several points and says, there may be certain rate-related cases that can proceed and that courts can grant relief. And in just drawing that distinction, he focused on the complexity of the rate-making decision and second-guessing careful state analysis. And we don't have that here. Because again, as I said previously, the state didn't do anything with respect to 30A because they didn't think they had to. So this is, as Justice Breyer phrases it in his case, one of the easy rate-making sheep or something along those lines. No court, at least this court, has never said with respect to 30A that it's okay for the state to do nothing before it enacts a significant rate change. And that's exactly what happened here. And that's why the district court enjoined it. Wouldn't you have to, based on the complaint we have here, I mean, let's say we read Armstrong differently than you do, hypothetically. Wouldn't you want to go back and ask us to grant leave to amend the complaint? Because really, the way the complaint is written is very different than what you're saying now. And I understand, look, something happened in between, there was an earthquake and it was called Armstrong. You didn't have a crystal ball and see that. But, I mean, aren't we really trying to put a square peg in a round hole here with this complaint? In all fairness, that is true to some degree, just because the law was one thing at the time it was filed and even when the injunction was ordered. And then Armstrong did change things, but we don't think in a way that necessarily would require amending of the If you could pick this current complaint that's before us or have a different complaint, I assume you would prefer a different complaint than the one you have now, in light of the change of law, which there is no way you could have predicted. Yes, I would grudgingly admit that, yes. So that's my view of Armstrong. So our reading of the case still allows this court to the CMS approval and what role that played. And while it's true that there is case law out there that suggests that CMS approval of a SPA or rate change is entitled to deference, it's only deference and it's not determinative. And there have been, you know, the case law historically has a number of instances where the courts have looked at policies that have been approved by CMS and nevertheless found that they still violated federal law. And in fact, one case from this court that's very recent, it's the ARC decision, ARC, which I believe was decided in 2013, where exactly that happened. And it was, I believe, after the managed pharmacy care case that the state is relying on. And in ARC, just like in this case, the state didn't, in adopting the challenge policy, didn't conduct any analysis at all because they also in that case, but for different reasons, said that 30A didn't apply. And so the court took that into consideration. They also took into consideration that CMS eventually approved whatever it was and still held it invalid because they said, you know, we can't validate a complete abdication of the responsibility to consider the 30A factors. And it eventually overturned and sustained an injunction of that particular law. And we think this case follows the same pattern. CMS's determination is not determinative. Maybe it deserves deference, but if it's clear that a state doesn't do anything at all, CMS's decision can be disregarded, not disregarded, but doesn't control the day. And the state also suggests, and this is something that's discussed in the Armstrong decision also in terms of whether 30A should be judicially enforceable, the fact that there is this, they characterized CMS's ability to approve spas and withhold federal funds from noncompliant states as basically the exclusive means of enforcing Medicaid Act provisions, or at least Section 30A. In that regard, the statute that establishes the Secretary or CMS's review authority and the ability to withhold funds is 1396C, 42 U.S.C., 1396C. And we didn't get a chance to really brief this extensively because this was raised in the Department's responsive brief on appeal, and we didn't get an opportunity to reply since our last brief was limited to the cross-appeal issues. But 1396C has been considered a number of times by a number of courts, including this one, and no court has ever been willing to say that it's an exclusive remedial vehicle for Medicaid Act violations. Balvey Rogers, for example, from this court, is one case that discusses that. It's not phrased in terms that typically courts have interpreted to mean that Congress is intending to supplant a private remedy. So private remedies to enforce Medicaid actions have long existed along with the Secretary's approval decision, and it makes sense because the Secretary, frankly, is not always looking at the same things as courts should be in assessing compliance with the Medicaid Act violations. I think this case is a perfect example of it. We have a statute that was enacted in 2009 that wasn't actually approved until January 2014. Even though there was litigation ongoing, there was admissions by the State that they didn't do anything to comply with Section 30A before enacting the State, yet CMS, nevertheless, based largely just on representations from the State that what they did complies with it, signed off on it, you know, four and a half years later. But I'm trying to understand what harm you're trying to remedy here, because you're not seeking damages, correct? No, we're not. So what? Well, and I was going to get into that as part of the equal protection argument, but I think it's important I can pause and get into that here. Yes. So the statute that the AIDS Healthcare Foundation is trying to enjoin does two things. It requires Medicaid providers who are also eligible to participate in this 340B drug discount program to dispense drugs that were purchased with the discount to Medi-Cal patients. So that's what we refer to as the carve-in requirement. In addition to that, or in tandem with it, it also says that once, if you, so we're only going to pay you, you 340B providers, your acquisition cost plus a small dispensing fee. So it both requires them to, I guess, pass through the discount to the State and limits the amount of reimbursement they get. And we are challenging both aspects of that statute. And the harm comes in the fact that the 340B covered entities that get this discount are being effectively forced to provide these drugs to Medi-Cal beneficiaries at a much lower rate than private entities who aren't eligible for the discount. No, and that part of it I get. I meant the delay in the approval. So there was a long period of time when, you know, California passes this law and the CMS takes four years or whatever it is to approve it. But now they have. Right. And they did it retroactively back to October of 2009. And you had done no harm during that period? Well, that's the... What harm are you trying to remedy, I guess, is what I'm trying to understand. It was already in litigation and an injunction was already in place before they actually got to the approval process. And because of the litigation, the State wasn't really actively enforcing the statute, although some volunteered to comply with it. So there was no harm done during that period, right? Well, different 340B covered entities took different approaches. So some of them may have voluntarily subjected themselves to this... Voluntarily doesn't help. So again, what I'm trying to understand is that I understand the complaint. You're saying, look, they were supposed to get approval from CMS and they didn't. Right. They didn't for a long time. But then... If there was a lack of harm, it only was a result of the non-enforcement of the statute because of the litigation. But what are you asking this court to do? What harm are you asking us to remedy on that issue, on the delay in approval? Oh, honestly, even though that was part of the district court order, I think we wouldn't necessarily say that this court has to opine or affirm that aspect of the injunction. But it also, the court, aside from a SPA approval, also found that it violated 30A. And under cases like ARC, if a court finds that a State failed to comply with 30A, they still have the power to enjoin the statute. If the law was violated, the approval doesn't undo that. So that's our 30A claim. But there's a separate claim that they can't implement the statute without Federal approval. But they have that now. They have that now. So I would just say we can disregard that piece of the claim and focus on the 30A piece. Okay. May I just ask you one question? I happened to be reading through my ballot last night. Does this case relate to that proposition that's on the ballot? Truthfully, I'm aware that there is a proposition. But I couldn't answer the question whether it relates to it directly. Because it seemed to me it was a rather similar question. And I wondered whether that was going to move this case. It may. And AIDS Healthcare Foundation is very active politically in trying to get advocating for the people that they service. Would you notify us since we are close to this remarkable election? Yes, I will check with my client. You don't have to do it right now. I wasn't going to. Okay. I mean, at your leisure. Let us know whether that might move the case. Yes, I will absolutely do that. So I guess I only have a few more minutes to turn to the equal protection claim. And I have already touched on some things a little bit. But before getting to that, I think what I want to touch on that I think is a little buried in the briefs since there's so many issues in this case, is the actual reason the 340B statute was enacted in the first place. The whole point of the statute is to give certain safety net providers access to these discounted drugs so they can take that savings and use it for other things like expanding services, improving quality, et cetera. I mean, that's the whole goal of the statute. And it doesn't just apply to parties like AIDS Health Foundation that treat AIDS patients. It applies to black lung clinics, community clinics, hospitals that treat a disproportionate share of low-income patients. And Congress's idea was, well, let's give these guys some savings on drugs so they can use that to meet the needs of all these needy, poor, very sick patients, et cetera. So that's the backdrop for all of this. And what the state's statute does, and, again, there's two parts of it. There's the carbon part and the reimbursement part. It basically co-ops that savings for the state and deprives these parties of using the discounts as they were intended. And another thing I want to note about the 340B statute is that we've got to go. You know, you're out of time, so why don't we give you one minute for your equal protection argument? Okay. So what I'll say is this. On the reimbursement piece of the statute that requires that they are only reimbursed at cost plus a dispensing fee, I think the state has offered no justification for that, in my opinion, and this I think is supported by the record, other than saving money. And saving money, this Court has recognized, is not a legitimate reason for drawing a discriminatory classification. All these administrative ease rationales, that goes to the carbon piece. Those, even accepting those as true, which AHF contests and explains in the brief why they're not rational, that's not an explanation for giving these safety net providers less reimbursement than, like, Rite Aid when they dispense the same drug to the same patient. And just one last thing on the similarly situated. This Court has already ruled on that issue. The state made the same argument in their motion to dismiss that by virtue of the fact that they, the 340B providers have access to this discount, they're not similarly situated. The Court rejected that argument at the pleading stage. All the facts that AHF alleged make them similarly situated were proven at the district court level, and the district court accepted it. Courts in construing equal protection arguments in Medi-Cal cases have looked at, do the providers render the same, do the two classes render the same types of services to the same types of patients? And they do. That's all that we need to establish to make us similarly situated, and we have. That's what the district court found. Thank you, counsel. Thank you. Thank you, Your Honor. I'll start in the order that opposing counsel went and addressed his arguments. Justice Breyer, in his concurring opinion in the Armstrong case, did not hold open the possibility that equitable relief is possible in a Section 38 case. He said that there may be instances where the court could easily determine whether it's a non-complex rate-setting case and give injunctive relief, but he said there is no easy way to tell that in the beginning, and for that reason, no cases are entitled to equitable relief. And, counsel, he joined Part 3 of the majority opinion, didn't he? He did. He joined Part 1, 2, and 3, and not 4. And 3 is the part where they say there's no private right of action. Correct. With respect to the ARC decision, that case is distinguishable here because even though the state in the ARC decision did not do a cost study up front, the reason why the court struck down those statutes is because CMS did not expressly conclude that the statutes there complied with Section 38. Here we have that expressed decision by CMS. It went through all the factors in 38 and said the state complied and the statute complies with those provisions. So, again, the ARC decision doesn't apply here. Counsel made an argument that they're being discriminated against because the large chain pharmacies dispense the same drugs to the same Medi-Cal beneficiaries. And that may be true, but they are not purchasing the drugs at the 340B price, and so they are not getting the up-front discount. They're paying more. They're getting reimbursed more. AIDS Health Confirmation and other 340B entities are paying less. They're getting reimbursed less. And the federal guidance that the state has or is issued to the state by the federal government requires the department and the state to pay 340B entities their acquisition cost plus the dispensing fee. So that's how that is determined. In terms of this court, when this case was here in the Ninth Circuit the first time, it did not hold that AIDS Healthcare Foundation is similarly situated to non-340B providers. It was reviewing the court's decision on the motion to dismiss and didn't make any decisions on the merits. It just simply held that AIDS Healthcare Foundation had plausibly pled an equal protection claim and made no determination as to whether it was similarly situated or not. And unless the court has any other questions for me, then I'll submit. Thank you, Counsel. Thank you. Thank you very much. Thank you both for the argument. The case just argued will stand submitted. And if either of you want to tell us this case is moved because of the ballot measure, we'll be delighted. Thank you.
judges: Reinhardt, Fernandez, Owens